# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

PHILLIP VARELA,          )
                                   )
         Plaintiff,       )
                                   )      **Civil Action No. 3:14-00556**
     v.                     )      **Judge Trauger / Knowles**
                                   )
CAROLYN W. COLVIN,     )
Acting Commissioner of Social Security,  )
                                 )
        Defendant.    )

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 12. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 13. Plaintiff has filed a Reply. Docket No. 16.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff completed his application for Disability Insurance Benefits ("DIB") on July 28,

2010, alleging that he had been disabled since February 20, 2009,[1] due to muscle spasms, chronic back pain, hip pain, depression, sleep apnea, anxiety, and dizziness. *See, e.g.,* Docket No. 10, Attachment ("TR"), pp. 108-109, 135-142, 162-167. Plaintiff's application was denied both initially (TR 60-63) and upon reconsideration (TR 65-67). Plaintiff subsequently requested (TR 68-69) and received (TR 80-97) a hearing. Plaintiff's hearing was conducted on August 30, 2012, by Administrative Law Judge ("ALJ") Scott Shimer. TR 30-54. Plaintiff and Vocational Expert ("VE"), Pedro Roman, appeared and testified. *Id*. Plaintiff's attorney, Robert Parker, also appeared. *Id*.

On September 19, 2012, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 9-29. Specifically, the ALJ made the following findings of fact:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2014.
>
> 2. The claimant has not engaged in substantial gainful activity since April 1, 2010, the amended alleged onset date (20 CFR 404.1571 *et seq*.).
>
> 3. The claimant has the following severe impairments: obesity; degenerative disc disease; osteoarthritis of the hips; major depressive disorder; and anxiety disorder (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the

_____

[1] At his hearing, Plaintiff amended his alleged onset date to April 1, 2010. TR 38.

undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he can stand and/or walk four hours in an eight-hour workday; only occasionally balance, stoop, kneel, crouch, and crawl; never climb ladders/ropes/scaffolds; have no exposure to unprotected heights or unguarded, moving machinery; understand, remember, and carry out short, routine, repetitive tasks but not complex work; and workplace changes should be gradual and infrequent.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on January 3, 1979 and was 30 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 20, 2009, through the date of this decision (20 CFR 404.1520(g)).

TR 14-25.

On November 8, 2012, Plaintiff timely filed a request for review of the hearing decision.

TR 6-8. On December 18, 2013, the Appeals Council issued a letter declining to review the case

(TR 1-5), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner

if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 CFR §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the

---

[2] The Listing of Impairments is found at 20 CFR, Pt. 404, Subpt. P, App. 1.

claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred by failing to properly consider: (1) the opinion of Dr. James Head, Plaintiff's treating physician; (2) the opinion of Dr. Dorothy Lambert, Plaintiff's consultative psychological examiner; and (3) Plaintiff's "obstructive sleep apnea, obesity, and use of a cane" Docket No. 12-1. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id*.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

**1. Opinion of Dr. James Head, Plaintiff's Treating Physician**

Plaintiff argues that the ALJ failed to properly evaluate the opinion of Dr. James Head, his treating physician. Docket No. 12-1 at 11. Plaintiff contends that Dr. Head's treatment notes document consistent findings that support Plaintiff's disability. *Id.* at 12, *citing* 214-221, 254-278, 293-333. Plaintiff further contends that Dr. Head's June 2012 letter stating that Plaintiff is unable to work as a result of his bilateral hip pain and low back pain that worsens with activity, as well as his anxiety, depression, difficulty completing tasks, and inability to focus, also supports his disability. *Id., citing* 296. Plaintiff maintains, "Despite this extremely significant evidence regarding the severity of Plaintiff's impairments, the ALJ completely rejected Dr. Head's opinion in his decision, assigning it 'little weight' without consideration of all the regulatory factors." *Id., citing* 21. Plaintiff argues that the ALJ erroneously accorded Dr. Head's opinion "little weight" and failed to explain his reasoning for discounting this opinion, even though Dr. Head's letter was consistent with his treatment notes and with the evidence of record. *Id.* at 13-14.

Plaintiff further asserts that the ALJ erred when he accepted Dr. Head's mental health

recommendations but rejected his physical health recommendations, because Dr. Head is not a mental health specialist. *Id.* at 14-15. Plaintiff additionally asserts that the ALJ inexplicitly relied upon Dr. Head's September 2010 opinion, but rejected his updated June 2012 opinion, which opined greater mental restrictions for Plaintiff. *Id.* Plaintiff contends that the ALJ failed to provide a reasonable explanation for rejecting Dr. Head's updated opinion, particularly in light of the fact that the updated opinion is supported by the opinion of the consultative psychological examiner and by the State agency consultants' opinions, which relied upon Dr. Head's September 2010 opinion. *Id.*

Plaintiff also argues that the ALJ "failed to consider the length and nature of the treatment relationship between [Plaintiff] and Dr. Head." *Id.* Plaintiff maintains that: (1) Dr. Head has been his treating physician throughout the period under review; (2) his opinion is not inconsistent with the evidence of record; and (3) the medical records provide substantial support for his opinion." *Id.* Plaintiff asserts, therefore, that the ALJ should have accorded Dr. Head's opinion "controlling weight," "or, at the very least, [] deference." *Id.*

Defendant responds that the ALJ properly considered the opinions of Dr. Head. Docket No. 13 at 8-10. Defendant notes first that Dr. Head's September 2010 opinion indicated that Plaintiff had no work-related limitations, but his June 2012 opinion indicated that Plaintiff was "unable to work." *Id.* at 8. Defendant contends that: (1) Dr. Head's opinion and treatment notes were reviewed by other physicians of record who also opined that Plaintiff could work; (2) the ALJ properly weighed the different medical opinions of record and explained his rationale for the weight accorded to each; and (3) the ALJ properly concluded that Plaintiff could perform a range of light work. *Id.* at 8-9.

Defendant also responds that, because Dr. Head is an "acceptable medical source," he is "qualified" to provide a medical opinion regarding Plaintiff's mental limitations. *Id.* at 10. Defendant notes that Dr. Head is the only physician that treated Plaintiff for mental impairments, and argues, "While Plaintiff claims that the doctor is unqualified to provide an opinion, he apparently feels that the doctor is qualified to treat him for that impairment." *Id.* Defendant further argues that Dr. Head primarily treated Plaintiff for mental impairments, as he generally referred Plaintiff to other physicians to treat his physical impairments and his treatment notes "reveal minimal to no objective findings regarding Plaintiff's allegedly disabling physical impairments." *Id.*

Defendant additionally contends that the ALJ did not "completely reject" Dr. Head's June 2012 opinion that Plaintiff was "unable to work," but simply accorded it "little weight" because it was not supported by the medical records, and because the ability to work is an issue reserved for the Commissioner, as Plaintiff's employability involves knowledge regarding vocational factors that are outside of Dr. Head's expertise. *Id.* at 12-13. Defendant also responds that, in acknowledging that "Dr. Head was Plaintiff's treating primary care provider," discussing the frequency of treatment by Dr. Head, and explaining why he discounted Dr. Head's opinion, the ALJ properly considered the requisite regulatory factors. *Id.* at 13-14. Defendant notes that the ALJ can permissibly reference evidence set forth in an earlier place in his opinion, and is not required to "restat[e] the same evidence twice." *Id.*

Plaintiff, in his Reply, argues that "neither Defendant nor the ALJ stated how any weight whatsoever was given to [Dr. Head's June 2012] opinion or how that was accounted for in his decision." Docket No. 16 at 3. Plaintiff also replies that the ALJ did not discuss the frequency

of Dr. Head's treatment, but rather, "merely cites to the ALJ's discussion of the treatment notes, which do not address how frequently or how long [Plaintiff] treated with Dr. Head." *Id.* Plaintiff further replies that the ALJ cannot simply state that Dr. Head's opinion is "unsupported by the record as a whole outlined above," but instead, must specifically identify the inconsistencies or findings which the ALJ felt were contrary to Dr. Head's opinion. *Id.* at 3-4. Finally, Plaintiff replies that neither Defendant nor the ALJ provided a reasonable explanation for rejecting Dr. Head's June 2012 opinion that Plaintiff was unable to focus and had difficulty completing tasks, when that opinion is supported by the consultative psychological examiner. *Id.* at 4.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the

factors in paragraphs (d)(3) through (d)(6) of this section in
determining the weight to give the opinion. ...

(3) Supportability.  The more a medical source presents
relevant evidence to support an opinion, particularly medical signs
and laboratory findings, the more weight we will give that opinion.
The better an explanation a source provides for an opinion, the
more weight we will give that opinion. ...

(4) Consistency.  Generally, the more consistent an opinion
is with the record as a whole, the more weight we will give to that
opinion.

(5) Specialization.  We generally give more weight to the
opinion of a specialist about medical issues related to his or her
area of specialty than to the opinion of a source who is not a
specialist.

. . .

20 CFR § 416.927(d) (emphasis added).  *See also* 20 CFR § 404.1527(d).

The ALJ must articulate the reasons underlying his decision to give a medical opinion a
specific amount of weight.[3]  *See, e.g.,* 20 CFR § 404.1527(d); *Allen v. Commissioner*, 561 F.3d
646 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004).  The reasons
must be supported by the evidence and must be sufficiently specific so as to make clear to any
subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the
reasons for that weight.  SSR 96-2p.

The Sixth Circuit has held that, "provided that they are based on sufficient medical data,
the medical opinions and diagnoses of treating physicians are generally accorded substantial

---

[3] There are circumstances when an ALJ's failure to articulate good reasons for the weight
accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so
patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or
makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of
20 CFR §1527(d), by analyzing the physician's contradictory opinions or by analyzing other
opinions of record.  *See, e.g., Friend v. Commissioner*, 375 Fed. Appx. 543, 551 (6th Cir. April
28, 2010); *Nelson v. Commissioner*, 195 Fed. Appx. 462, 470-72 (6th Cir. 2006); *Hall v.
Commissioner*, 148 Fed. Appx. 456, 464 (6th Cir. 2006).

deference, and if the opinions are uncontradicted, complete deference." *Howard v.*

*Commissioner*, 276 F.3d 235, 240 (6th Cir. 2002) (*quoting Harris v. Heckler*, 756 F.3d 431, 435

(6th Cir. 1985)). If the ALJ rejects the opinion of a treating source, he is required to articulate

some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The

Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical
> source who provides you or has provided you, with medical
> treatment or evaluation and who has, or has had, an ongoing
> treatment relationship with you.

20 CFR § 404.1502.

Acknowledging that Dr. Head has been Plaintiff's primary care physician since April

2010, the ALJ comprehensively discussed Plaintiff's treatment history with Dr. Head as follows:

> In April 2010, the claimant established primary care with James
> Hand,[4] M.D., and reported dizziness when bending and turning and
> pain in his right hip. Lumbar spine imaging showed early
> degenerative changes. The claimant also reported some depression
> and anxiety symptoms. He reported sleeping 5-6 hours per night.
> The medications Lexapro and Zipsor were prescribed (Exhibit 1F).
>
> . . . . .
>
> During June 2010, the claimant had a follow up with Dr. Hand. He
> reported intermittent back pain and chronic fatigue. He stated that
> the medications Lexapro, Zipsor, and Mobic were not very helpful
> to his depression or back pain. An exam documented no abnormal
> findings. The dosage of Lexapro was increased to 30 mg daily and
> the medication Lodine XR 600 mg twice a day was prescribed
> (Exhibits 7F, 8F).
>
> During July 2010, the claimant reported only mild symptom relief

---

[4] In several instances throughout the ALJ's decision, the ALJ inadvertently refers to Dr.
Head as Dr. Hand. *See* TR 14-15. Plaintiff does not take issue with this, and it appears to simply
be a typographical error, as the contents of the records discussed are accurate.

with Lexapro, so Cymbalta 30 mg daily was prescribed instead. He reported that Lodine and Mobic provided no back pain relief; however, no new medication was prescribed for back pain. His weight was 336 pounds (Exhibit 7F). . . .

By August 2010, the claimant reported that Cymbalta was working better and helping more. The dosage was increased to 60 mg. Again, Dr. Hand prescribed no specific medication for back pain (Exhibit 7F). . . .

In September 2010, the claimant reported to Dr. Hand that Cymbalta worked well but that he felt depressed "every once in a while." No medication changes were made (Exhibit 7F).

During November and December 2010, the claimant reported no improvement in his back and hip pain. He requested a letter from Dr. Hand regarding disability. His weight was noted at 350+ pounds. He was encouraged to continue Cymbalta and Ibuprofen 800 mg three times a day (Exhibit 7F). . . .

During 2011, the claimant received refills of Cymbalta from Dr. Hand during March and June. In addition, the medication Ketoprofen 75 mg twice a day was prescribed for pain (Exhibit 13F).

. . .

In November 2011, the claimant reported increased back pain, and still only tenderness was noted on exam. Treatment consisted of Tramadol 37.5 mg three times a day (Exhibit 13F).

. . .

. . . At a follow up appointment [to Plaintiff's June 13, 2012 emergency room visit for left hip pain], he was referred to orthopedics and given a trial of Hydrocodone 7.5 mg twice a day (Exhibit[] 13F . . .)

TR 18-20, *citing* 254-268, 296-300 (footnote added).

The ALJ discussed Dr. Head's June 2012 letter opining that Plaintiff was unable to work as follows:

In June 2012, Dr. Head wrote a letter, which stated that the claimant was unable to work due to bilateral hip and low back pain that worsened with activity (Exhibit 13F). The undersigned accords little weight to this statement. It provides no specific limitations, and the objective record fails to support that the claimant is unable to perform any work activity. All physical exams fail to show any abnormal findings. In fact, exams consistently show intact sensation, normal motor strength in all extremities, normal gait, intact coordination, and no tremor (Exhibit 8F).

TR 21, *citing* 269-278, 296-300.

The ALJ also noted Dr. Head's June 2012 opinion regarding Plaintiff's mental impairments:

In June 2012, Dr. Head wrote a letter, which stated that the claimant was unable to work due to anxiety and depression and that he was unable to focus or complete tasks (Exhibit 13F). This letter has been accorded little weight in this decision. It is simply unsupported by the record as a whole outlined above.

TR 23, *citing* 296-300.

As can be seen, the ALJ: (1) acknowledged that Dr. Head was Plaintiff's primary care physician beginning in April 2010; (2) throughly reviewed and discussed Plaintiff's treatment with Dr. Head dating from April 2010 onward; and (3) appropriately discussed the June 2012 letter from Dr. Head in which Dr. Head noted Plaintiff's inability to focus or complete tasks and opined that Plaintiff was unable to work due to anxiety, depression, and bilateral hip and low back pain that worsened with activity. The ALJ explained that he discounted Dr. Head's June 2012 letter because it did not list any "specific limitations," and it is unsupported by the evidence of record. *Id.* Throughout his decision, the ALJ specifically discusses the evidence that is

contrary to Dr. Head's June 2012 opinion. *See* TR 14-25.[5] As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 CFR § 416.927(d)(2) and 20 CFR § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* When

---

[5] For example, the ALJ explained:

> During July 2010, the claimant reported only mild symptom relief with Lexapro, so Cymbalta 30 mg daily was prescribed instead. He reported that Lodine and Mobic provided no back pain relief; however, no new medication was prescribed for back pain. His weight was 336 pounds (Exhibit 7F). At an orthopedic consultation later in the month, the claimant was observed to have normal standing posture, to arise from seated position without difficulty, and to squat and touch ground with complaints of pain. There was mild discomfort in the right groin with extremes of internal rotation of the right hip but not with external rotation. He was nontender about the lower back and hip. There were no neurological deficits in the lower limbs. The assessment was right hip degenerative joint disease that was treated with Neurontin 300 mg nightly and Aleve 550 mg twice a day. He was encouraged to lose weight (Exhibit 2F).

> By August 2010, the claimant reported that Cymbalta was working better and helping more. The dosage was increased to 60 mg. Again, Dr. Hand prescribed no specific medication for back pain (Exhibit 7F). A left hip MRI showed moderate diffuse chondromalacia of the anterosuperior aspect of the right hip, a tear in the anterior labrum, and abnormal shape of the femoral head-neck junction. These findings suggest femoroacetabular impingement. The claimant was observed to walk with a waddling gait due to obesity, but he did not limp. There was pain with internal rotation and moderate restriction in movement. The orthopedist stated that the claimant primarily needed to lose at least 100 pounds (Exhibit 2F).

TR 19.

the opinions are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 CFR § 416.927(e)(2). The ALJ's discussion of Dr. Head's treatment and opinions of Plaintiff was therefore proper.

Additionally, the ultimate determination of Plaintiff's ability to work is an issue reserved to the Commissioner; thus, a treating physician's opinion that a plaintiff is unable to work is not binding. *See e.g.* 20 CFR 404.1527(d)(1); *King v. Heckler*, 742 F.2d 968, 973 (1984) (finding that because a finding of disability requires consideration of medical and vocational information, the Secretary is not bound by a physician's finding of disability). The ALJ was not bound to accept Dr. Head's opinion that Plaintiff was unable to work, as this is not his determination to make; thus, Plaintiff's argument fails.

Plaintiff also argues that the ALJ erred in relying upon a September 2010 letter written by Dr. Head regarding Plaintiff's mental health. Docket No. 12-1 at 14-15. The ALJ summarized this September 2010 letter from Dr. Head as follows:

> The residual functional capacity is further supported by a letter from Dr. Head in September 2010, wherein he reported that the claimant had adequate memory and social ability but moderate impairment in concentration. However, the claimant could remember and carry out simple, 1-2 step instructions and maintain a work routine without frequent breaks for stress-related reasons. He could maintain an ordinary work routine without inordinate supervision. He could maintain socially appropriate behavior, hygiene, and grooming. He could respond appropriately to normal stress and routine changes. He could care for self and maintain independence in daily living tasks on a sustained basis. He could maintain a work schedule without missing frequently due to psychological issues. He could manage his own funds (Exhibit 7F).

TR 22-23, *citing* 254-268.

Although Plaintiff claims that the ALJ erred in relying on this mental health evaluation

because Dr. Head is not a mental health specialist, the Regulations do not so proscribe. Rather, while the Regulations do provide that more weight is generally given to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist, they do not preclude acceptance of an opinion rendered by an acceptable medical source who is not a specialist. 20 CFR § 416.927(d); 20 CFR § 404.1527(d). In fact, the Regulations also provide that more weight is generally given to the opinion of a treating physician than a non-treating physician, and that all evidence is to be considered. *Id.* Dr. Head is Plaintiff's treating physician and is an acceptable medical source who is qualified to render an opinion that is to be considered by the ALJ and accorded weight as the ALJ deems appropriate in light of the record before him.

The ALJ in the case at bar reviewed and considered Plaintiff's mental health treatment history with Dr. Head and Dr. Head's September 2010 letter concerning Plaintiff's mental health. He ultimately concluded that Dr. Head's September 2010 letter was consistent with the record and with the residual functional capacity he assigned. TR 22. The ALJ's consideration of Dr. Head's September 2010 letter was proper. Plaintiff's argument on this point fails.

## 2. Opinion of Dr. Dorothy Lambert, Plaintiff's Consultative Psychological Examiner

Plaintiff argues that the ALJ improperly evaluated the opinion of the independent consultative medical examiner, Dr. Dorothy Lambert, by "fail[ing] to state or make clear the weight given to this opinion in his decision." Docket No. 12-1 at 9-10. Plaintiff argues that Dr. Lambert assessed him with having a marked impairment in his ability to react to changes, which supports a finding of disability. *Id.* at 10. Plaintiff notes that the ALJ "failed to provide any statement or rationale for discrediting Dr. Lambert's opinion, and further failed to address or

18

resolve the significant inconsistencies between this opinion and his decision findings." *Id.*

Plaintiff also argues that the ALJ erred by accepting the opinions of "reviewing, non-examining" physicians over Dr. Lambert's opinion, because more weight is generally given to the opinion of an examining source than to a non-examining source. *Id.*, *citing* 20 CFR 404.1527(c)(1). Additionally, as noted in the statement of error above, Plaintiff contends that the ALJ erred in according more weight to the opinion of Dr. Head concerning Plaintiff's mental impairments and their resulting limitations than to that of Dr. Lambert, when Dr. Lambert is a mental health specialist. *Id.* Plaintiff notes that because Dr. Lambert's opinion is inconsistent with the ALJ's RFC findings, and the ALJ failed to resolve "these significant inconsistencies in his decision," the ALJ's opinion is "erroneous, without merit, and lack[s] the support of substantial evidence." *Id.* at 11.

Defendant responds that the ALJ "properly considered Dr. Lambert's opinion in evaluating the record as a whole." Docket No. 13 at 10. Defendant argues that: (1) Dr. Lambert's assigned GAF score of 55 is inconsistent with her opinion that Plaintiff has "marked impairments"; (2) she did not review any of Plaintiff's previous psychiatric records; and (3) Plaintiff's subsequent medical records "showed no significant mental abnormalities." *Id.* at 11. Defendant notes that the ALJ followed Dr. Lambert's "instructions to consider her information 'in conjunction with all available information,'" and contends that the ALJ's findings are consistent with the record as a whole. *Id.* Defendant further responds that Drs. Lawrence and Berkowitz, the State agency medical consultants who reviewed Plaintiff's medical records in their entirety, including Dr. Lambert's evaluation, ultimately concluded that Dr. Lambert's restrictions were entitled to less weight than Dr. Head's opinion. *Id.* at 12. Defendant

essentially contends that the ALJ's acceptance of the opinions of the State agency medical consultants over that of Dr. Lambert was proper because the State agency medical consultants based their opinions on review of the complete record before them, whereas Dr. Lambert did not, and because their opinions were consistent with, and supported by, the evidence. *Id.*

Plaintiff, in his Reply, asserts that Defendant has misstated his argument on this point. Docket No. 16 at 1. Plaintiff clarifies that his contention is not that the ALJ erred in giving no weight to Dr. Lambert's opinion, but rather, that, although the ALJ acknowledged Dr. Lambert's opinion, he failed to: (1) address it; (2) state the weight that it was accorded; (3) provide any statement or rationale for discrediting it; and (4) address or resolve the "significant inconsistencies" between it and the ALJ's findings. *Id.* at 1-2. Plaintiff argues that the explanation proffered by Defendant against Dr. Lambert's assessment that Plaintiff was "markedly impaired" in his ability to react to changes is Defendant's explanation, not the ALJ's. *Id.* at 2. Plaintiff contends that "the ALJ made no such attempt whatsoever to explain the weight given to Dr. Lambert's opinion or address this marked limitation in reacting to changes." *Id.* Plaintiff contends that this "represents clear error," such that the ALJ failed to properly evaluate Dr. Lambert's opinion. *Id.*

The ALJ addressed Dr. Lambert's consultative examination findings as follows:

> Regarding mental limitations, a psychological consultative examination was performed in November 2010 by Dorothy Lambert, Ph.D., wherein the claimant drove himself and arrived alone and on time. His appearance was described as neat and casual. The claimant was taking Cymbalta 60 mg nightly for depression. He was described as articulate, alert, and cooperative. His mood was calm, and his affect was polite. Occasional suicidal ideation was noted. He reported cutting himself when angry or depressed. He reported associating with his family and his girlfriend. Daily activities

consisted of working in the yard and performing household chores with frequent rest periods. He   could prepare simple meals, run errands, watch television, get on the computer, and read. The diagnostic impressions were major depressive disorder, moderate, recurrent and anxiety disorder not otherwise specified, and personality disorder not otherwise specified with borderline and social avoidant features. His Global Assessment of Functioning score was estimated at 55.  Dr. Lambert stated that the claimant was not impaired in the ability to understand and remember short work-like procedures and locations. He had moderate impairment in concentration and persistence and in his ability to interact with others. Marked limitations were noted in his ability to react to changes (Exhibit 4F).

TR 21, *citing* 229-235.

The ALJ also summarized the opinions of Drs. Lawrence and Berkowitz, the State agency

non-examining, reviewing psychological consultants in this action:

State agency psychological consultants reported that the claimant has mild restriction of activities of daily living; mild difficulties maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and has experienced no episodes of decompensation. More specifically, moderate limitations were noted in his ability to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others (Exhibits 5F, 6F).

Despite these moderate limitations, Dr. Lawrence reported that the claimant could understand and remember simple and detailed instructions; persist with simple and detailed tasks and maintain a consistent pace with normal breaks; maintain attention and concentration for two hours with normal breaks; relate appropriately to peers and supervisors; infrequently interact with the public; adapt to gradual and infrequent changes; and set short-term goals (Exhibit 6F).

TR 21-22, *citing* 236-249, 250-253.

Ultimately, the ALJ found:

> In activities of daily living, the claimant has mild restriction.
> Activities of daily living were reported as watching television,
> playing video games, running errands, performing personal care
> tasks, preparing quick and simple meals, sweeping/mopping floors,
> vacuuming, mowing, doing laundry, shopping in stores and via
> computer, managing his meager finances, walking around mall for
> exercise, and occasionally performing car maintenance. He
> requires no special reminders for medication, grooming, or
> appointments. He drives an automobile and goes out alone. He
> can follow written and spoken instructions. He handles stress well
> (Exhibits 4E, 8E).
>
> In social functioning, the claimant has mild difficulties. The
> claimant has a fiancé. He spends time with family and talks to
> others via the computer. He gets along well with authority figures,
> family, friends, and neighbors (Exhibits 4E, 8E).
>
> With regard to concentration, persistence or pace, the claimant has
> moderate difficulties. This finding is supported by the consultative
> examiner (Exhibit 4F). However, marked limitation is not
> warranted in this area. He reports that he spends time watching
> television, playing video games, running errands, performing
> personal care tasks, preparing meals, doing household chores,
> shopping in stores and via computer, and managing his finances.
> He requires no special reminders. He drives and goes out alone.
> He can follow written and spoken instructions, and handles stress
> well (Exhibits 4E, 8E).
>
> As for episodes of decompensation, the claimant has experienced
> no episodes of decompensation, which have been of extended
> duration. There are no allegations of such episodes and none was
> found in the record.
>
> . . . Discussed in detail below, these findings are supported by the
> opinion of the state agency psychological consultant (Exhibit 5F).

TR 15-16, *citing* 143-150, 168-175, 229-235, 236-249.

While discussing the evidence of record, the ALJ explained:

After a thorough consideration, the undersigned found only mild
social limitations, despite other moderate findings. This finding is
based on the claimant's testimony that he did not have any
problems getting along with others. He has a fiancé. In addition, he
[has] not been on psychotropic medications for a while. This is due
to finances, but despite the reason, the claimant has apparently
been able to function well, even without medication.

Again, activities of daily living support the residual functional
capacity, as the claimant watches television, plays video games,
runs errands, performs personal care tasks, prepares quick and
simple meals, does household chores including laundry, shops in
stores and via computer, manages his meager finances, walks
around mall for exercise, and occasionally performs car
maintenance. The claimant requires no special reminders for
medication, grooming, or appointments. He can drive an
automobile, go out alone, and ride with others. He spends time
with family and talks to others via computer. He can follow
written and spoken instructions. He gets along well with authority
figures, family, friends, and neighbors. He handles stress well
(Exhibits 4E, 8E).

In addition, mental status exams throughout 2010, 2011, and 2012
fail to indicate marked mental limitations (Exhibit 2F, 3F, 8F, 12F,
14F). In October 2010, he drove himself to an appointment and
was alone. His general appearance, degree of self-care, attitude,
and degree of cooperation were good. He reported that his
thinking and behavior were normal. He was thought to have
normal intellectual functioning and normal speech. He was
cooperative and reliable (Exhibit 3F). In June 2012, the claimant
was observed to have appropriate demeanor and interpersonal
interaction (Exhibit 14F).

TR 22, *citing* 143-150, 168-175, 214-221, 222-228, 269-278, 293-295, 301-333.

As has been demonstrated, the ALJ reviewed all of the medical and testimonial evidence

of record, including the opinion rendered by Dr. Lambert, and reached a reasoned decision that

was supported by the evidence of record. While Dr. Lambert did opine that Plaintiff had marked

limitations in his ability to react to changes, the ALJ was not bound to blindly accept that finding,

particularly because there was conflicting evidence in the record. As discussed in the previous statement of error, when there is conflicting evidence in the record, it is the ALJ's responsibility to consider the evidence in its entirety and reach a reasoned decision, as the ultimate decision regarding the weight to be accorded to the evidence lies with the ALJ. As can be seen in the quoted passages above, the ALJ explicitly discussed the conflicting opinion and testimonial evidence and explained the rationale for his decision; his decision was supported by substantial evidence, and his consideration of Dr. Lambert's opinion was proper. Plaintiff's argument on this point fails.

### 3. Plaintiff's Severe Impairments and Residual Functional Capacity

Plaintiff argues that the ALJ erred by finding his obesity to be a severe impairment but not providing "sufficient limitations in his RFC assessment" to account for his obesity. Docket No. 12-1 at 16. Specifically, Plaintiff argues that his "extreme morbid obesity and severe bilateral hip impairments would certainly be expected to result in limitations which would preclude his ability to be on his feet for half of the workday," and that "these impairments combined with his extreme morbid obesity would also certainly be expected to limit the amount of time he could be on his feet uninterrupted." *Id.*, *citing* 16. Plaintiff contends that because the ALJ failed to provide any limitations in his RFC that would limit the amount of time Plaintiff could stand uninterrupted, the ALJ failed to sufficiently account for Plaintiff's morbid obesity in his decision. *Id.*

Plaintiff further argues that the ALJ erred in not finding Plaintiff's obstructive sleep apnea to be a severe impairment or accounting for it in his RFC assessment. *Id.* Specifically, Plaintiff notes that the ALJ acknowledged his diagnosis of obstructive sleep apnea, but takes

issue with the ALJ's statement that a "2010 sleep study documented 'excellent response to CPAP therapy' (Exhibits 1F, 8F)," because "this same sleep study showed that, despite improvement with CPAP titration, his sleep architecture was still abnormal with absent deep and decreased REM sleep." *Id.* at 16-17, *citing* 14, 195, 199-202. Plaintiff contends that subsequent treatment notes show that he was unable to tolerate the CPAP machine, despite trying different masks, and that he continued to complain of fatigue and difficulty breathing when asleep. *Id.* at 17, *citing* 258, 265, 269, 293, 294, 324-326. Plaintiff argues, therefore, that the ALJ should have found his obstructive sleep apnea to be a severe impairment and have assessed the resulting limitations. *Id.*

Plaintiff also argues that, although the ALJ acknowledged his use of a cane, the ALJ failed to address Plaintiff's use of a cane or account for it in his RFC finding. *Id.* Plaintiff notes that his need for a cane is significant due to his documented "impairments of the bilateral hips and his extreme morbid obesity." *Id.* Plaintiff argues that because of these impairments, it would be difficult "to be on his feet for at least half of the workday and to use his upper extremities while on his feet, . . . [and] to perform the postural activities assessed in this ALJ's RFC finding." *Id.*

Plaintiff summarizes his argument on this point: "the ALJ failed to include sufficient limitations in his RFC finding which result from [his] morbid obesity, OSA [obstructive sleep apnea] and use of a cane," such that the ALJ's "RFC finding and decision lack the support of substantial evidence." *Id.* at 18.

Defendant responds that "the ALJ properly found Plaintiff's obstructive sleep apnea to be a nonsevere impairment," as "Plaintiff did not comply with his CPAP machine or instructions to follow up with his specialist." Docket No. 13 at 14, *citing* 14-15. Defendant asserts that the ALJ

nonetheless accounted for "Plaintiff's resulting fatigue" in his RFC assessment. *Id.*, *citing* 15.

With regard to obesity, Defendant contends that the ALJ considered Plaintiff's obesity, found it to be a severe impairment, recognized that the State agency medical consultant's limitations were based "primarily" on Plaintiff's obesity, imposed greater limitations specifically because of Plaintiff's obesity, and explicitly noted that he accounted for it in his RFC findings. *Id.* at 15, *citing* 14, 17, 20, 21.

As to his use of a cane, Defendant notes that Plaintiff was not prescribed a cane by a medical professional, only a single medical record documents Plaintiff's use of a cane, and the ALJ considered and accounted for Plaintiff's hip problems in his RFC finding by limiting him to standing/walking for four hours. *Id., citing* 21, 149, 174, 225, 315. Defendant notes that Plaintiff has identified no medical opinion stating that he is incapable of standing/walking for four hours because of his hips. *Id.*

Overall, Defendant argues that because "the ALJ properly considered such factors as Plaintiff's medical treatment, the medical evidence, his daily activities, and the medical opinions," his finding that Plaintiff could perform a range of light work is supported by substantial evidence and should be affirmed. *Id*.

Plaintiff's Reply incorporates by reference his initial arguments on this point. Docket No. 16 at 4.

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 CFR Pt. 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's RFC, the Regulations state:

When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 CFR § 404.1545(b).

After consideration of the entire record, the ALJ determined that Plaintiff retained the RFC "to perform light work as defined in 20 CFR 404.1567(b) except that he can stand and/or walk four hours in an eight-hour workday; only occasionally balance, stoop, kneel, crouch, and crawl; never climb ladders/ropes/scaffolds; have no exposure to unprotected heights or unguarded, moving machinery; understand, remember, and carry out short, routine, repetitive tasks but not complex work; and workplace changes should be gradual and infrequent." TR 16.

The ALJ explained:

In reaching the above conclusion regarding the claimant's residual functional capacity, the undersigned has considered the information and allegations contained within the Disability Reports, Function Report, Work History Reports, and Medication List completed by and on behalf of the claimant (Exhibits 1E-13E). Additionally, the undersigned has considered the claimant's allegations at the hearing regarding disabling symptoms. The undersigned has not discounted such allegations solely on the basis of the absence or minimal nature of the objective medical record. Rather, the undersigned has afforded full consideration to all of the evidence presented relating to subjective complaints, including, as appropriate and applicable herein, the claimant's prior work record and observations by third parties and treating and examining physicians . . .

TR 17, *citing* 121-190.

Explaining the environmental and postural limitations he assigned Plaintiff in his RFC assessment, the ALJ stated:

> The undersigned finds the claimant's allegations are credible insofar as they are consistent with the limited range of light work cited above. The environmental limitations regarding hazards/heights are based on the claimant's report[s] of dizziness when bending or turning a lot (Exhibit 7, page 12). While the consultative examiner found no limitations based on his limited physical exam findings, the state consultant reported medium exertional limitations and mostly frequent postural activities. However, postural[s] have been reduced to occasional due to obesity, degenerative disc disease, and osteoarthritis. In addition, the stand/walk limit of 4 hours is based on bilateral hip osteoarthritis.

TR 21, *citing* 254-268.

As can be seen, the specifically addressed the limitations that he found in his RFC assessment and explained how he determined them. Contrary to Plaintiff's assertion that the ALJ did not sufficiently account for his obesity and use of a cane in his RFC finding, the ALJ explicitly stated that he reduced the Plaintiff's postural limitations to account for Plaintiff's obesity, degenerative disc disease, and bilateral hip osteoarthritis, and he limited Plaintiff to standing or walking for four hours to accommodate his bilateral hip osteoarthiritis.

Moreover, when reviewing the record, the ALJ specifically noted Plaintiff's weight as ranging from 336 pounds to 382 pounds, at 5'7" tall. TR 17-20. The ALJ also repeatedly discussed the evidence reflecting the difficulty Plaintiff faced due to his obesity, including his pain and reported physical limitations, his slightly decreased gait secondary to obesity, and the fact that he "was observed to walk with a waddling gait due to obesity." *Id.* The ALJ also noted physicians' repeated counsel to Plaintiff to lose weight, and he noted that the postural limitations

opined by the medical consultants were "based primarily on obesity." *Id.*

With regard to Plaintiff's use of a cane, the ALJ specifically recounted the only medical record before him that noted Plaintiff's use of a cane, but also recounted that that same record contained a physical examination performed on the same day that showed normal gait, good coordination, normal sensation, and normal strength. TR 20, *referencing* TR 315-317. As the ALJ discussed, Plaintiff's medical records repeatedly reveal that Plaintiff was found to have a normal gait, normal motor strength, and intact sensation. TR 17-20. The ALJ further noted that, although Plaintiff was "observed to walk with a waddling gate due to obesity," "he did not limp." TR 19.

The ALJ summarized:

> In sum, the record documents the claimant's severe impairments of obesity, degenerative disc disease, osteoarthritis of the hips, major depressive disorder, and anxiety disorder. Consideration has been given to these impairments as reflected in the residual functional capacity. However, the functional restrictions alleged by the claimant are not entirely credible, as they have been found to be disproportionate to the clinical findings. The claimant's subjective complaints have been accepted, as far as they were supported by the objective evidence and the record as a whole. His impairments are limiting; however, not disabling. The record simply does not support the claimant's allegations of disability.

TR 23.

The ALJ properly considered the evidence before him and accounted for limitations in Plaintiff's RFC that he deemed were consistent with the evidence of the record as a whole. Plaintiff's arguments concerning the ALJ's consideration of his obesity and use of a cane fail.

Turning to Plaintiff's contention that the ALJ erred in not finding Plaintiff's obstructive

sleep apnea to be a severe impairment or accounting for it in his RFC, the ALJ in the instant

action discussed Plaintiff's obstructive sleep apnea as follows:

> In addition to the severe impairment[s] listed above, the record
> reveals a diagnosis of obstructive sleep apnea. A 2010 sleep study
> documented "excellent response to CPAP therapy" (Exhibits 1F,
> 8F). However, the claimant refuses to wear the CPAP mask.
> Although he has been referred to specialists, the record documents
> no further treatment, only complaints regarding the mask and of
> fatigue. Based on this evidence, the undersigned finds this
> impairment to be non-severe, as the evidence fails to establish that
> the claimant's obstructive sleep apnea would have more than a
> minimal impact on his ability to perform basic work activity.
> However, the allegations of fatigue have been considered in the
> function-by-function analysis below.

TR 14-15, *citing* 194-213, 269-278.

As can be seen, the ALJ considered the records regarding Plaintiff's obstructive sleep

apnea, but did not find it to be a severe impairment because Plaintiff refused to comply with

treatment that helped this impairment, because Plaintiff did not seek follow up treatment after he

decided to quit using his CPAP mask, and because the evidence fails to demonstrate that it would

have more than a minimal impact on his ability to perform basic work activity. *Id*. Accordingly,

the ALJ explained his rationale for not finding Plaintiff's obstructive sleep apnea to be a severe

impairment.

Additionally, the ALJ explicitly stated that he considered Plaintiff's allegations of fatigue

when reaching his overall RFC assessment. *Id*. When discussing the evidence, the ALJ noted

that: (1) Plaintiff "reported that fatigue and depression also limit his ability to complete tasks

and to concentrate" (TR 17); (2) Plaintiff reported sleeping five to six hours per night (TR 18);

(3) Plaintiff reported "chronic fatigue" (TR 19); and (4) at the reconsideration level, Plaintiff

again reported fatigue (TR18). Plaintiff's argument that the ALJ failed to consider or account for the effects of Plaintiff's fatigue resulting from his obstructive sleep apnea in his RFC assessment is unsupported by the ALJ's decision.

As discussed above, the ALJ properly considered the objective and testimonial evidence of record when determining Plaintiff's "residual functional capacity for work activity on a regular and continuing basis." The ALJ reached a reasoned decision that was supported by substantial evidence in the record, and he appropriately explained his rationale for reaching his RFC determination. Plaintiff's argument fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____

E. CLIFTON KNOWLES
United States Magistrate Judge